UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| AUTHWALLET, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 7:24-cv-00065-DC-DTG |
| | § | |
| CIBC BANK USA, | § | |
| | § | |
| Defendant. | § | |

### DEFENDANT CIBC BANK USA'S MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION UNDER FRCP 12(B)(1)

Defendant CIBC Bank USA ("CIBC") files this Motion to Dismiss for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) because Plaintiff AuthWallet, LLC was never assigned the patent-in-suit and, therefore, Plaintiff does not have standing to assert U.S. Patent No. 8,099,368 ("the '368 Patent") and the Court lacks subject matter jurisdiction.

Under very similar circumstances, Judge Albright recently granted a motion to dismiss for lack of standing, found the case exceptional, imposed sanctions on the plaintiff and counsel for failure to conduct a proper pre-suit investigation, and awarded attorney fees and costs to the defendant. *Silent Communications, LLC v. BlackBerry Corporation f/k/a Research In Motion Corporation*, 6-22-cv-00252-ADA (W.D. Tex – Waco) (*See* Dkt. 57 (order granting Rule 12(b)(1) motion to dismiss for lack of standing) and Dkt. 106 (ordering sanctions and granting motion for attorney fees)).  The plaintiff in that case was a non-practicing entity controlled by Carlos O. Gorrichategui (the same individual that controls the Plaintiff in this case), and the plaintiff there was represented by William P. Ramey and Ramey LLP (the same lawyer and firm that represent the Plaintiff here).

I.     **FACTUAL BACKGROUND**

On February 22, 2023, AuthWallet filed its first lawsuit against CIBC asserting infringement of U.S. Patent No. 8,099,368 Patent ("'368 Patent"). *See* Original Complaint filed in *AuthWallet, LLC v. CIBC Bank USA,* Cause No. 6:23-cv-00141-DAE (W.D. Tex – Waco). AuthWallet filed a voluntary dismissal before the answer was due. *Id*. (Dkt. 13).

After the one year statutory period expired for filing an *inter partes* review, AuthWallet refiled the complaint asserting infringement of the '368 Patent on March 1, 2024 (Dkt. 1), and an amended complaint on July 24, 2024 (Dkt. 16). Plaintiff alleges that "Plaintiff is a Texas Limited Liability Company with its principal place of business located in Harris County, Texas" and "Plaintiff owns the '368 patent by assignment." (Dkt. 1 at pp. 1 and 3; Dkt. 16 at pp. 1 and 3). The '368 Patent was issued on Jan 17, 2012.

The public assignment history of the '368 Patent accessible at the United States Patent and Trademark Office ("USPTO") calls Plaintiff's statement into question. That record reflects six recorded assignments, as follows.

First, on November 3, 2009, the three named inventors executed an assignment of the '368 Patent to Fonwallet Transaction Solutions, Inc. ("Fonwallet"). *See* Declaration of D. Scardino ("Scardino Dec."), Ex. 1.

Second, Fonwallet then purportedly assigned "100% of its right, title, and interest[,]" "including the right to sue for any and all past, present, and future damages," in the '368 Patent, to "AuthWallet LLC, an Illinois limited liability company" ("AuthWallet Illinois") via a notarized assignment executed on behalf of Assignor Fonwallet by Todd Coulter dated March 5, 2020, and recorded at the USPTO on March 6, 2020 with a Patent Assignment Cover Sheet dated April 20, 2020 (Reel/Frame 052439/0845). Scardino Dec., Ex. 2. Notably, AuthWallet Illinois did not exist as a legal entity at that time because it was not organized under the laws of the State

of Illinois until May 5, 2020.  Scardino Dec., Ex. 3 (Articles of Organization of AuthWallet LLC Illinois, dated May 5, 2020).

Third, a "Corrective Assignment" was recorded on February 8, 2022 (Reel 058980/Frame 0261) purportedly assigning 100% of Fonwallet's "right, title, and interest[,]" "including the right to sue for any and all past, present, and future damages," in the '368 Patent, to "AuthWallet LLC, a *Texas* limited liability company," (emphasis added) ("AuthWallet Texas") via an unnotarized assignment executed on behalf of Assignor Fonwallet by Todd Coulter and dated March 3, 2020.  Scardino Dec., Ex. 4.  Again, AuthWallet Texas did not exist as a legal entity as of the date of the March 3, 2020 "Corrective Assignment" because it was not organized under the laws of the State of Texas until over a year later on March 30, 2021.  Scardino Dec., Ex. 5 (Certificate of Organization of AuthWallet Texas filed by William P. Ramey as Organizer and dated March 30, 2021).

Recently, after counsel for Defendant asked counsel for Plaintiff which assignment it was relying on for standing, counsel for Plaintiff identified a Patent Purchase Agreement dated March 2, 2020 between Fonwallet and AuthWallet Illinois (the "PPA").  Plaintiff claims that the PPA is the assignment by which it—the Texas entity (AuthWallet Texas) that is the Plaintiff in this case—claims ownership of the '368 Patent.  Scardino Dec., Ex. 6 (filed under seal).  The agreement bears the electronic signature of Todd Coulter, as CEO of the assignor, Fonwallet, and the signature of Carlos O. Gorrichategui as the manager of the assignee, AuthWallet Illinois.  Scardino Dec., Ex. 6 at 9 (signature page).  The PPA states that the law of the State of Texas governs "its performance and interpretation." Scardino Dec., Ex. 6 at 7 (Section 10.4).  The PPA includes, as Exhibit B, an assignment of patent rights from Fonwallet to "AuthWallet LLC, an Illinois limited liability company" executed via electronic signature by Todd Coulter and dated March 3, 2020. This assignment was not recorded with the USPTO, but it is identical in every

respect but one (as explained below) to the "Corrective Assignment" filed at the USPTO on February 8, 2022. Again, neither AuthWallet Illinois nor AuthWallet Texas existed as of the date the PPA. Scardino Dec. at Exs. 3 and 5.

The notable difference between the assignment attached as Exhibit B to the PPA and the "Corrective Assignment" filed with the USPTO is that Mr. Gorrichategui modified one word in the document. He changed the word *Illinois* to *Texas*, so the March 3, 2020 assignment document that was filed with the USPTO as a "Corrective Assignment" on February 8, 2022 appeared to be an assignment to AuthWallet Texas rather than to AuthWallet Illinois, as set forth in the original, unaltered document attached as Exhibit B to the PPA. A comparison of the two documents appears below:

Exhibit B to Patent Purchase Agreement:

> Fonwallet Transaction Solutions, Inc. ("Assignor") is owner of U.S. Patent Nos. 8,244,643; 8,099,368; 8,280,776; 8,370,265; 9,292,852 (collectively entitled "the Patents" as set forth on Exhibit A). **AuthWallet LLC,** an Illinois limited liability company, ("Assignee") desires to acquire rights in and to the Patents.

Altered assignment attached to "Corrective Assignment" filed with the USPTO in 2022:

> Fonwallet Transaction Solutions, Inc. ("Assignor") is owner of U.S. Patent Nos. 8,244,643; 8,099,368; 8,280,776; 8,370,265; 9,292,852 (collectively entitled "the Patents" as set forth on Exhibit A). **AuthWallet LLC,** a  Texas    limited liability /COG company, ("Assignee") desires to acquire rights in and to the Patents.

The altered assignment filed with the USPTO bears the initials "COG" next to the alteration, referring to Mr. Gorrichategui, who personally filed the "Corrective Assignment" on February 8, 2022. Scardino Dec., at Ex. 4.[1]

---

[1] When filing records with the USPTO, the filer has a duty of candor and good faith (37 CFR § 1.56), and it is a federal crime to knowingly and willfully make false or fraudulent statements to a government agency or make or use any false writing or document in connection with dealings with a government agency (18 U.S.C. § 1001).

Several other purported assignments have recently been recorded at the USPTO by Todd Coulter after the filing of this suit, which are not directly relevant to this motion. Notably, though, Mr. Coulter has filed these assignments and supporting documents with the USPTO to challenge the validity of the AuthWallet assignments, and he has filed a notice in this case challenging AuthWallet's ownership of and standing to enforce the patent-in-suit. *See* Dkt. 39.

## II.   LEGAL FRAMEWORK

### A.   FRCP 12(b)(1)

Under Fed. R. Civ. P. 12(b)(1), a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear the claim. "A motion to dismiss for want of standing . . . is properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. U.S.*, 486 F.3d 806, 810 (3d Cir. 2007). The standard for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) is whether "it appears certain that the plaintiff cannot prove any set of facts in support of their claim which would entitle them to relief." *Benton v. U.S.,* 960 F.2d 19, 21 (5th Cir. 1992).

A motion to dismiss for lack of standing may be either facial (*i.e.*, attacking the sufficiency of the pleadings) or factual (*i.e.*, challenging the existence of subject-matter jurisdiction in fact, irrespective of the pleadings). *See* 2 James W. Moore, Moore's Federal Practice § 12.30 (3d ed. 1997). When presented with a factual attack on subject-matter jurisdiction, matters outside of the pleadings are properly considered. *See Oaxaca v. Roscoe,* 641 F.2d 386, 391 (5th Cir. 1981) (""A factual attack on the subject matter jurisdiction of the court . . . . challenges the facts on which jurisdiction depends[,] and matters outside of the pleadings, such as affidavits and testimony, are considered."); s*ee also, Gotha v. U.S.*, 115 F.3d 176, 179 (3d Cir. 1997). Additionally, "no presumptive truthfulness attaches to plaintiff's allegations, and the

existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Carpet Group Int'l v. Oriental Rug Importers Ass'n, Inc.*, 227 F.3d 62, 69 (3d Cir. 2000) (*quoting Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). "If a defendant makes a 'factual attack' upon the court's subject matter jurisdiction over the lawsuit, the defendant submits affidavits, testimony, or other evidentiary materials." *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). "[A] plaintiff is also required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction." *Id*.

When ruling on a motion to dismiss for lack of standing, the court may consider: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by disputed facts that the Court has resolved. *IP Innovation LLC v. Google, Inc.*, 661 F.Supp.2d 659, 662 (E.D. Tex. 2009) (citations omitted).

Ultimately, the burden is on the plaintiff to prove that subject-matter jurisdiction exists. *See Clouding IP, LLC v. Google Inc.*, 61 F. Supp. 3d 421, 428 (D. Del. 2014). The court should only dismiss when it is clear the claimant can prove no set of facts in support of its claims that would entitle it to relief. *IP Innovation*, 661 F.Supp.2d at 662-63.

### B.     Standing in a Patent Case

"In order to seek damages for infringement of a patent," a plaintiff must show it had "standing at the inception of the lawsuit." *Sky Techs. LLC v. SAP AG*, 576 F.3d 1374, 1379 (Fed. Cir. 2009) (*citing Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1579 (Fed. Cir. 1991)). To show standing, a plaintiff "must demonstrate that it held enforceable title to the patent" when it filed suit. *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1309–10 (Fed. Cir. 2003). Only "[p]arties that hold exclusionary rights and interests in a patent have constitutional standing to sue infringers." *IP Innovation LLC* at 662-63 (*citing Morrow v.*

*Microsoft*, 499 F.3d 1332, 1339 (Fed. Cir. 2007)).

"A party's standing to sue for patent infringement derives from the Patent Act, which provides that '[a] patentee shall have remedy by civil action for infringement of his patent.'" *Enovys LLC v. Nextel Commc'ns, Inc.*, 614 F.3d 1333, 1341 (Fed. Cir. 2010) (emphasis in original) (*quoting* 35 U.S.C. § 281). "A 'patentee' includes 'not only the patentee to whom the patent was issued but also the successors in title [assignees] to the patentee.'" *Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1346 (Fed. Cir. 2001) (alteration in original) (*quoting* 35 U.S.C. § 100(d)); *see also Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F. 3d 1336, 1340 (Fed. Cir. 2006).

"The Federal Patent Act requires that all assignments of patent interests be in writing." *Sky Techs.*, 576 F.3d at 1379; 35 U.S.C. § 261 ("[P]atents, or any interest therein, shall be assignable in law by an instrument in writing."). Thus, to support standing, Plaintiff has the burden to show the requisite ownership of the patent rights through a written instrument. *See Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1364 (Fed. Cir. 2010).

Moreover, the purported assignment of a patent by an entity or person that does not hold exclusionary rights and interests in the patent is a nullity. *Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 935 F.2d 1263, 1265 (Fed. Cir. 1991) (citing *RAD Data Communications, Inc. v. Patton Electronics Co.*, 822 F. Supp. 351, 353 (S.D.N.Y. April 20, 1995) (explaining that if a purported assignor "had nothing to assign, the purported assignment from [assignor] to plaintiff of the [asserted] patent[] is a nullity").

Similarly, a purported assignment of a patent to an entity that does not exist is void as a matter of law. *See Imperium (IP) Holdings, Inc. v. Apple Inc.*, No. 4:11-CV-163, 2012 WL 2995997, *4 (E.D. Tex. June 4, 2012), *report & recommendation adopted*, 2012 WL 2995697, *2 (E.D. Tex. July 23, 2012) (explaining that an assignment to an entity that did not exist at the

time of the agreement is "void as a matter of law"); *Blackbird Tech LLC v. ELB Elecs., Inc.*, No. 15-056-RGA, 2020 WL 5409052, *2 (D. Del. Sept. 9, 2020) (concluding that an assignment agreement was void because the entity that the agreement assigned the patent to did not exist); *Silent Communications, LLC v. BlackBerry Corporation f/k/a Research In Motion Corporation*, 6-22-cv-00252-ADA (W.D. Tex – Waco May 19, 2023) (Dkt. 57 at 7-8) ("Silent Texas did not exist at the time of the Illinois Assignment […] Thus, even if the Texas Assignment reformed a mutual mistake within the Illinois Assignment, the assignment agreement would have failed to convey [assignor's] interest in the asserted patent.").

  **C.**  **Exceptional Case**

Under the Patent Act, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. A dismissal of patent infringement claims with prejudice for lack of standing is equivalent to a judgment on the merits and establishes the accused infringer as the prevailing party. *Raniere v. Microsoft Corp.*, 887 F.3d 1298, 1307 (Fed. Cir. 2018).

A case's exceptionality is determined by a consideration of the totality of the circumstances. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). "Exceptional" means that the case "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.* A case that presents "either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to be 'exceptional'" and justify an award of fees. *Id.* at 546. Courts may consider factors such as "frivolousness, motivation, objective unreasonableness (both in the legal and factual components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence" when determining exceptionality. *Id.* at 554 n.6

(*citing Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994) (addressing similar fee-shifting provision in Copyright Act)).  Fee awards should not be used "as a penalty for failure to win a patent infringement suit." *Octane Fitness* at 548–49 (citation omitted); *see also Checkpoint Sys., Inc. v. All-Tag Security S.A.*, 858 F.3d 1371, 1376 (Fed. Cir. 2017). Exceptionality must be shown by a preponderance of the evidence.  *Octane Fitness*, 572 U.S. at 557 (rejecting prior requirement that patent litigants establish entitlement to fees under § 285 by clear and convincing evidence).

### III.    ARGUMENT

#### A.    The Case Must Be Dismissed Because the Plaintiff Does Not Have Standing

Generally, "[t]he assignment of a patent's legal title is interpreted using contract statutes and common law in the state where the assignment took place." *Schwendimann v. Arkwright Advanced Coating, Inc.*, 959 F.3d 1065, 1072 (Fed. Cir. 2020).  As noted above, the PPA states that it is governed by the laws of the State of Texas.  Similar to patent rights (which can only be conveyed in writing), contracts for the purchase/sale of land are governed by a statute of frauds and are also deemed void in Texas when the grantee / assignee is not in existence at the time the deed is executed.  *Parham Family Ltd. P'ship v. Morgan*, 434 S.W.3d 774, 787 (Tex. App.–Houston [14th Dist.] 2014, no pet.) (*citing Lighthouse Church of Cloverleaf v. Tex. Bank*, 889 S.W.2d 595, 600 (Tex. App.-Houston [14th Dist.] 1994, *writ denied*) ("[I]n Texas, a deed is void if the grantee is not in existence at the time the deed is executed.")); *see also Fisher v. Southland Royalty Co.*, 270 S.W.2d 677, 680 (Tex. App.—Eastland 1954, *writ ref'd n.r.e.*) and *Savering v. City of Mansfield*, 505 S.W.3d 33, 46 (Tex. App.—Fort Worth 2016, *pet. denied*).

In the patent context, courts hold that an assignment to a non-existent entity would similarly be "void as a matter of law" and could not confer standing. *See Imperium (IP) Holdings, Inc. v. Apple Inc.*, No. 4:11-CV-163, 2012 WL 2995997, *4 (E.D. Tex. June 4, 2012),

*report & recommendation adopted*, 2012 WL 2995697, *2 (E.D. Tex. July 23, 2012) (adopting the magistrate's finding that "even if the assignment was intended to be assigned to ESS Technologies International, Inc., that entity did not exist at the time of the 2004 Pictos Assignment. Therefore, the 2004 Pictos Assignment would be void as a matter of law, and Pictos Technologies, Inc. would have retained their rights to the patents-in-suit.").[2] This rule aligns with the overarching concern with protecting the chain of title in patent law, as reflected in 35 U.S.C. § 261's requirement that patent assignments must be in writing, and that a defect in standing at the outset cannot be cured.[3]

Because Plaintiff (AuthWallet Texas) did not exist at the time the assignment from Fonwallet was executed in 2020 (and did not come into existence until more than a year later), the Plaintiff could not have received the necessary exclusive rights to the patent from Fonwallet

---

[2] *See also, AFTG-TG, LLC v. Gigabyte Tech. Co.*, No. 10-cv-288-F, 2011 WL 13079278, at *4-6 (D. Wyo. March 10, 2011) ("when the inventor assigned the patents to the AFTG-TG Utah company [which was dissolved prior to the filing of the complaint], he could not possibly have intended to transfer to AFTG-TG Wyoming [the named plaintiff in the case] because that entity did not yet exist."); *Blackbird Tech LLC v. ELB Elecs., Inc.*, No. 15-056-RGA, 2020 WL 5409052, *2 (D. Del. Sept. 9, 2020) (concluding that an assignment agreement was void because the entity that the agreement assigned the patent to did not exist); *Silent Communications, LLC v. BlackBerry Corporation f/k/a Research In Motion Corporation*, 6-22-cv-00252-ADA (W.D. Tex – Waco May 19, 2023) (Dkt. 57 at 7-8) (finding that patent assignment to Illinois entity could not have been intended for Texas entity that did not exist until over a year after the assignment, even if there was a mutual mistake by the parties to the assignment).

[3] *See Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1364 (Fed. Cir. 2010) ("if the original plaintiff lacked Article III initial standing, the suit must be dismissed, and the jurisdictional defect cannot be cured") (quoting *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 (Fed. Cir. 2005)). Not even a *nunc pro tunc* assignment can cure a jurisdictional defect. *See Enzo APA & Sons, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed. Cir. 1998) (holding that "*nunc pro tunc* assignments are not sufficient to confer retroactive standing" where no written transfer of rights under the patent had been made at the time claims were brought).

to confer standing.[4]  The "Corrective Assignment" filed by Mr. Gorrichategui in 2022 did not cure the defect for two reasons:  (1) that assignment filed in 2022 was not a confirming assignment executed by Fonwallet in 2022, but in fact was the assignment executed in 2020 long before the Plaintiff came into existence, and (2) Mr. Gorrichategui apparently altered the March 3, 2020 Assignment by erasing the word "Illinois" and replacing it with the word "Texas," even initialing the change, rendering the document a fraud in an apparent effort to record an assignment to Plaintiff after Plaintiff came in to existence in 2021.  But merely recording a document with the USPTO is not a reflection of the "validity of the document or the effect that document has on the title to an application, a patent, or a registration." 37 C.F.R. § 3.54; *Filtroil, N. Am., Inc. v. Maupin*, 2000 WL 33544088 at *4 (Fed. Cir.  March 30, 2000).

The fact that the Plaintiff did not exist at the time of the purported assignment from Fonwallet is a technical defect to the chain of title that cannot be cured and is dispositive of CIBC's standing challenge.

Further, AuthWallet cannot rely on principals of equity, if any applied, to conjure up proper standing.  AuthWallet filed the suit with unclean hands because it recorded a falsified version of the patent assignment document with the USPTO when it filed the "Corrective

---

[4] Even a promise to assign a patent in the future is not enough to confer standing if there is no written document assigning the patent to the plaintiff.  In *Abraxis Bioscience, Inc. v. Navinta LLC,* two related corporate entities owned the asserted pharmaceutical patents, and they intended to convey them to a third related entity, which, in turn, would assign them to the plaintiff. 625 F.3d 1359, 1360- 61 (Fed. Cir. 2010*).*  But, at the time the third related entity purported to assign the patents to the plaintiff, the two owners of the patents had not transferred them to the third entity, breaking the chain of title. *Id.* at 1361. The issue presented related to "[w]hether an assignment of patent rights in an agreement is automatic or merely a promise to assign" and the Federal Circuit held that "contracts that obligate the owner to grant rights in the future do not vest legal title to the patents in the assignee." *Id.* at 1364-65. The actual transfer of the asserted patents was to occur *in the future*, and thus the transferor had no rights to assign to the plaintiff. *Id.* at 1365. Despite the "intent" of the various related entities, "[c]ommon corporate structure does not overcome the requirement that even between a parent and a subsidiary, an appropriate written assignment is necessary to transfer legal title from one to the other." *Id.* at 1366.

Assignment" in 2022. *Compare* Scardino Dec., Ex. 4 (recorded assignment, altered by COG) *with Id.*, Ex. 6, pg. 11 (original unaltered assignment attached to the PPA assigning the patent to non-existent Illinois entity). Finally, AuthWallet has not pled that it has any other foundation for standing. Thus, AuthWallet lacks standing to assert any claims regarding the '368 Patent. *IP Innovation*, 661 F.Supp.2d at 662-63. Because AuthWallet lacked standing "at the time the suit [was] brought" (*Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 975-76 (Fed. Cir. 2005)) the Court lacks subject matter jurisdiction and the case must be dismissed under Rule 12(b)(1).

### B. Plaintiff Failed To Conduct a Proper Pre-Suit Investigation

A plaintiff is required to perform a proper pre-suit investigation, including confirming proper standing to sue for patent infringement. Here, a reasonable investigation of the chain of title of the '368 Patent would have led to the inevitable discovery that the purported assignment agreements to AuthWallet Texas predated the entity's legal existence and, thus, were void. The exceptional nature of this case is further underlined by AuthWallet's principal Carlos O. Gorrichategui's recordation of a phony patent assignment to try and cure the defect, as detailed above. AuthWallet's reckless conduct has cost not only this Court and Defendant much wasted time and resources, it has tainted AuthWallet's entire '368 Patent litigation campaign, which began in August 2022 when it filed the first of approximately twenty (20) lawsuits, most of which appear to have been abandoned by voluntary dismissal or dismissed following *de minimis* nuisance value settlements.[5] Such reckless litigation conduct renders this case exceptional under

---

[5] *AuthWallet, LLC v. Total System Services LLC*, 1-24-cv-03547 (NDGA), filed Aug. 09, 2024; *AuthWallet, LLC v. Heartland Payment Systems, LLC*, 2-24-cv-00594 (EDTX), filed Jul. 25, 2024; *AuthWallet, LLC v. Global Payments, Inc.*, 1-24-cv-03100 (NDGA), filed Jul. 12, 2024; *AuthWallet, LLC v. Fiserv, Inc.*, 7-24-cv-00063 (WDTX), filed Mar. 01, 2024; *AuthWallet, LLC v. Amarillo National Bank*, 7-24-cv-00064 (WDTX), filed Mar. 01, 2024; *AuthWallet, LLC v. Cullen/Frost Bankers, Inc.*, 7-24-cv-00066 (WDTX), filed Mar. 01, 2024; *AuthWallet, LLC v. The PNC Financial Services Group, Inc.*, 7-24-cv-00067 (WDTX), filed Mar. 01, 2024;

the Patent Act's fee shifting provision. 35 U.S.C. § 285. CIBC thus asks this Court find this an exceptional case and award CIBC its reasonable attorney fees and costs.

### C. Judge Albright Imposed Sanctions Under Nearly Identical Circumstances

Under nearly identical circumstances, Judge Albright imposed sanctions on Plaintiff's counsel, Mr. Ramey, and his client, Silent Communications -- another one of the entities that has the same principal as AuthWallet, Mr. Gorrichategui. *Silent Communications, LLC v. BlackBerry Corporation f/k/a Research In Motion Corporation*, WDTX-6-22-cv-00252, filed March 8, 2022, Dkt. 106. Plaintiff's *modus operandi* in that case was nearly identical. Silent Communication was a Texas entity that filed an initial lawsuit and dismissed it almost immediately, presumably simply to trigger the IPR deadline. Just as here, Silent Communication then refiled the case a year later. However, neither lawsuit reflected the owner-apparent of the asserted patents per the official patent assignment records. Instead, just as here, the assigned party was a Silent Communications Illinois entity. *Id.* at 2. Silent Communications eventually produced a "corrected" assignment by its principal Mr. Carlos O. Gorrichategui—who is also AuthWallet's principal—changing *Illinois* to *Texas*—same as here. Also as here, the Silent Communications Texas entity did not actually exist as of the date of the purported patent

---

*AuthWallet, LLC v. Woodforest National Bank*, 6-23-cv-00244 (WDTX), filed Apr. 03, 2023; *AuthWallet, LLC v. Amarillo National Bank*, 6-23-cv-00140 (WDTX), filed Feb. 22, 2023; *AuthWallet, LLC v. CIBC Bank USA*, 6-23-cv-00141 (WDTX), filed Feb. 22, 2023; *AuthWallet, LLC v. Cullen/Frost Bankers, Inc.*, 6-23-cv-00143 (WDTX), filed Feb. 22, 2023; *AuthWallet, LLC v. First Citizens Bank*, 6-23-cv-00144 (WDTX), filed Feb. 22, 2023; *AuthWallet, LLC v. Fiserv, Inc.*, 6-23-cv-00145 (WDTX), filed Feb. 22, 2023; *AuthWallet, LLC v. The PNC Financial Services Group, Inc.*, 6-23-cv-00146 (WDTX), filed Feb. 22, 2023; *AuthWallet LLC v. Omni Hotels Management Corporation*, 3-22-cv-01776 (NDTX), filed Aug. 12, 2022; *AuthWallet, LLC v. Hotels.com, LP*, 3-22-cv-01778 (NDTX), filed Aug. 12, 2022; *AuthWallet, LLC v. Small Luxury Hotels of the World Management, Inc.*, 4-22-cv-02749 (SDTX), filed Aug. 12, 2022; *AuthWallet, LLC v. Block, Inc.*, 1-21-cv-05463 (SDNY), filed Jun. 22, 2021; *AuthWallet, LLC v. American Express Company*, 1-21-cv-03219 (SDNY), filed Apr. 13, 2021; *AuthWallet, LLC v. Citigroup, Inc.*, 4-21-cv-01203 (SDTX), filed Apr. 13, 2021; *AuthWallet LLC v. Visa Inc.*, 3-20-cv-04121 (NDCA), filed June 22, 2022.

assignment to it. *Id.* at 4–5. Judge Albright concluded that the "corrective" Texas assignment was not a mistake as Plaintiff claimed since the Texas entity did not exist at the time. *Id.* at 5.

Judge Albright found that "Plaintiff failed to conduct an adequate pre-suit filing investigation, unnecessarily prolonged litigation, provided shifting theories of standing, failed to produce evidence that would cure the standing defect identified by BlackBerry, and caused [Defendant] to expend significant resources to oppose Plaintiff's arguments." *Id*. at 8–9. Here, the identical parties (Mr. Ramey and Mr. Gorrichategui) are playing the same shell game (a defunct Illinois entity, a non-existent Texas entity, and a "corrective" assignment that is void).

This Silent Communications case is not unique. Mr. Ramey and his firm have been repeatedly sanctioned by federal courts around the country for various forms of improper litigation conduct.[6]

Given the totality of these facts, the Court should find this case exceptional and award attorney fees, costs, and order such other relief as the Court deems just.

## IV. CONCLUSION

For the reasons above, Defendant's Motion should be granted and this case be dismissed with prejudice along with a finding that AuthWallet's incomplete pre-suit investigation renders this case exceptional and that CIBC be awarded its reasonable fees and costs.

Dated: April 24, 2025

Respectfully Submitted,

*/s/ Daniel Scardino*
Daniel Scardino
Texas State Bar No. 24033165
SCARDINO LLP
111 Congress Avenue, Suite 500

---

[6] *Koji IP, LLC v. Renesas Elecs. Am., Inc.*, 2025 WL 917110, *5-7 (N. D. Cal. March 31, 2025) (cataloging sanctions rulings against Mr. Ramey or his law firm).

        Austin, TX  78701
        Tel.: (512) 443-1667
        Fax: (512) 487-7606
        daniel@scardinollp.com

        Paige Arnette Amstutz
        State Bar No. 00796136
        SCOTT DOUGLASS & MCCONNICO LLP
        303 Colorado Street, Suite 2400
        Austin, Texas 78701
        Tel.: (512) 495-6300
        Fax: (512) 495-6399
        pamstutz@scottdoug.com

        *Counsel for Defendant CIBC Bank USA*

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on April 24, 2025, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

        */s/ Daniel Scardino*
        Daniel Scardino